**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

United States of America,

      Plaintiff

v.

Francisco Ivan Velazquez,

      Defendant

Case No.: 2:22-cr-00090-JAD-NJK

**Order Denying Defendant's Renewed Motion for Acquittal or New Trial**

[ECF No. 152]

Francisco Ivan Velazquez used a fake government program to coax unwitting Nevadans and Californians into filing false tax returns with the hopes of receiving fantastical refunds. A jury convicted Velazquez of wire fraud, impersonating an Internal Revenue Service (IRS) officer, and aiding in the preparation of a false tax return. Velazquez now renews his trial challenges to those convictions, theorizing that the jury acted irrationally because no evidence refuted his claims that he himself was duped into the scheme, he never called himself an IRS agent, he did not personally prepare the fraudulent documents, and his role in the scheme was minimal. But the law gives great deference to jury verdicts, and the government has identified sufficient evidence in this record to support the jury's findings and sustain each conviction. So I deny Velazquez's request for acquittal or a new trial.

## Background

Francisco Ivan Velazquez participated in a tax-fraud scheme in which victims were convinced to submit false 1099-Misc forms that reported wildly inflated withheld taxes with the end goal of receiving an equally inflated tax refund.[1] Velazquez marketed this scheme as a little-

---

[1] ECF No. 137 at 125:22–126:5.

known, government-backed "program" for people with home-mortgage issues.[2]  He sold the "program" to people he knew and through word of mouth.[3]  He also hosted events at which he would wear a suit and explain the "program."[4]  Victims could contact Velazquez at email addresses such as "IRS@clerk.com" and one ending in "irs.gov@usa.com,"[5] and he would hand out this business card to victims:[6]





[7]

To enter the program, victims were required to give Velazquez cashier's checks made out to payees such as "Deputy Bureau Audit IRS," "DBA IRS," "D.B.A. IRS CLERK" "FHPF,"[8] or

---

[2] *See* ECF No. 131 at 16:17–18:2.

[3] *See id.* at 15:15–16:22; ECF No. 134 at 52:1–3.

[4] ECF No. 134 at 37:9–39:11.

[5] ECF No. 140 at 46:7–8, 65:4–7.

[6] ECF No. 134 at 195:6–12.

[7] Ex. 512.

[8] Federal Holdings and Private Fundings.

2

"DBA SOS IRS."[9]  Those checks were deposited into bank accounts connected with Velazquez.[10]  Velazquez would then accompany victims to IRS offices in Nevada and California where they would submit the fraudulent tax returns in person.[11]  Other victims traveled to Los Angeles where they gave the fraudulent tax returns to Velazquez's son, who would make it appear as if he was faxing the documents, but he evidently never actually filed the returns.[12]

The IRS flagged the filed returns as fraudulent after receiving them.[13]  IRS agents then contacted the victims, who in turn called Velazquez and informed him that IRS agents had reached out to them.[14]  Wells Fargo Bank also shut down one of Velazquez's bank accounts connected with the scheme on suspicion of fraud.[15]

A grand jury eventually indicted Velazquez for his role in defrauding two victims: Gabriela Bueno and Camillo Torres.[16]  The generation of three cashier checks related to these victims became the basis of three wire fraud charges, and Velazquez's conduct and representations to them became the basis of two impersonation charges.[17]  Velazquez was also charged with aiding in the preparation of false tax returns for several earlier victims.[18]

---

[9] ECF No. 137 at 133:1–136:18; Exs. 171A, 234.

[10] *Id.*

[11] ECF No. 137 at 156:6–157:21, 19:5–22; ECF No. 134 at 164:8–19.

[12] ECF No. 134 at 45:22–48:5; ECF No. 140 at 65:14–19.

[13] *See* ECF No. 137 at 139:19–149:14.

[14] *Id.* at 149:7–14.

[15] ECF No. 140 at 58:25–59:9.

[16] ECF Nos. 1, 6.

[17] ECF No. 6 at 4–6.

[18] *Id.* at 7–8.  These charges alleged violation of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 912 (impersonation), and 26 U.S.C. § 7206(2) (preparation of false tax return), respectively.

At trial, Velazquez conceded that there was no government-backed "program" and the tax returns were fraudulent, but he testified that individuals on the East Coast had recruited him into the "program" and duped him about its legitimacy.[19] He contends that he was just an intermediary and that he honestly believed the "program" was real at the time, so he lacked the intent needed to sustain these charges. The jury ultimately convicted Velazquez of all three counts of wire fraud and both counts of impersonating an IRS officer, but found Velazquez guilty of only one count of preparing or presenting a false tax return related to victim Luis Erives.[20] Velazquez now moves for acquittal—or alternatively a new trial—under Federal Rules of Criminal Procedure 29 and 33(a), contending that no evidence shows that he knew the program was fraudulent, that he ever said he was an IRS agent, or that he personally prepared or played a significant role in the filing of the false tax return.[21]

## Discussion

Federal Rule of Criminal Procedure 29 permits a court to overturn a jury's guilty verdict if "the evidence is insufficient to sustain a conviction."[22] In reviewing the sufficiency of evidence at trial, courts must "view the evidence in the light most favorable to the prosecution" and ask only "whether any rational trier of fact could have found the defendant guilty of each element of the crime beyond a reasonable doubt."[23] "The hurdle to overturn" a jury verdict on

---

[19] ECF No. 140 at 26:20–35:22.

[20] ECF No. 148.

[21] *See generally* ECF No. 152.

[22] Fed. R. Crim. P. 29(a).

[23] *United States v. Heller*, 551 F.3d 1108, 1113 (9th Cir. 2009) (cleaned up).

4

an insufficient-evidence challenge "is high."[24]  "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."[25]

**A.      Sufficient evidence supports Velazquez's wire-fraud convictions because victims testified that they informed him that the program was fraudulent before the wire transfers.**

Velazquez argues that no evidence supported the "knowing" intent element of his wire-fraud convictions stemming from the three wire transfers that Velazquez caused while defrauding victims Bueno and Torres in May 2017 and January 2018.[26]  To prove wire fraud under 18 U.S.C. § 1343, the government must show beyond a reasonable doubt that (1) "the defendant knowingly participated in or devised a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises;" (2) "the statements or representations . . . were material;" (3) "the defendant acted with the intent to defraud, that is, the intent to deceive and cheat;" and (4) "the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme."[27]

To prove intent to defraud, the government must show that the defendant intended to "deceive *and* cheat" his victims.[28]  "A defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property

---

[24] *United States v. Rocha*, 598 F.3d 1144, 1153 (9th Cir. 2010).

[25] *United States v. Jackson*, 72 F.3d 1370, 1381 (9th Cir. 1995).

[26] ECF No. 152 at 5–7.

[27] *See Manual of Model Criminal Jury Instructions*, 15.32 (amended September 2025) (cleaned up); ECF No. 145 at 3–4 (jury instruction on wire fraud); *United States v. Holden*, 908 F.3d 395, 399 (9th Cir. 2018) (holding that wire-fraud instruction "accurately reflect[s] [Ninth Circuit] caselaw").

[28] *United States v. Miller*, 953 F.3d 1095, 1098 (9th Cir. 2020).

by means of those deceptions."[29]  The government must prove both deception and deprivation of property,[30] but circumstantial evidence and inferences from a defendant's misrepresentations may establish this intent.[31]  And a defendant also acts with an intent to defraud if he made the representation with a reckless indifference to its truth or falsity.[32]

Velazquez's acquittal bid essentially renews his theory of the case: that he did not intentionally deceive these victims because he believed the program was real and was unwittingly swept up in it, too.[33]  He submits that no witness testified that they saw Velazquez create or alter tax returns, Velazquez testified that he relied on pre-prepared materials that he believed were legitimate, and he consistently represented to victims that he thought the program was real.[34]  Nor is there "evidence in the record that . . . Velazquez was contacted and told that the program was fraudulent and continued to engage in it," so "nothing was introduced that would suggest . . .Velazquez was given due notice that the program was fraudulent."[35]

But the record contains sufficient evidence that could permit a rational juror to find that Velazquez knew or should've known the program was fake and nonetheless continued to represent it as real.  The government points to the testimony of earlier victims Hinojos and

---

[29] *Id.*

[30] *Id.*

[31] *United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008) (first quoting *United States v. Rogers*, 321 F.3d 1226, 1230 (9th Cir. 2003), then citing *United States v. Lothian*, 976 F.2d 1257, 1267–68 (9th Cir. 1992)).

[32] *See United States v. Lloyd*, 807 F.3d 1128, 1163–65 (9th Cir. 2015); *United States v. Dearing,* 504 F.3d 897, 903 (9th Cir. 2007) ("We have repeatedly held that the intent to defraud may be proven through reckless indifference to the truth or falsity of statements.").

[33] ECF No. 152 at 4, 6.

[34] *Id.* at 6.

[35] *Id.*

Golcher, who testified that Velazquez directed them to submit false tax returns, that IRS agents contacted them afterwards,[36] and that they called Velazquez and told him IRS agents visited their home.[37]  Velazquez counters that their testimony didn't expressly state that they said the program was fraudulent in these calls.[38]  But even if that were true, the court also allowed testimony from victims in California who did testify to that.  For example, one California victim testified:

> Q. Okay. Did you have a brief conversation with Ivan?
>
> **A.** Yes.
>
> Q. What did you tell him?
>
> **A.** I told him that there was an agent -- IRS agent at my house telling me that the whole thing was a fraud.[39]

The government also points to the fact that Wells Fargo closed one of Velazquez's bank accounts due to concerns of fraud.  And on cross-examination, Velazquez testified that he believed that those running the "program" had "cheated [him]" and "something bad was happening" based on those calls and his bank account's closure.[40]  All of this occurred in 2016 and early 2017—prior to the wire transfers that are the basis of these wire fraud convictions.  Velazquez's only rejoinder is that this notice theory rests on "inference and hindsight."[41]  But specific intent to defraud "may be established by circumstantial evidence" and "inferred from

---

[36] ECF No. 131 at 34:17–22; ECF No. 137 at 50:24–52:4, 149:7–14.

[37] ECF No. 131 at 36:10–24; ECF No. 137 at 50:24–52:4.

[38] ECF No. 154 at 4.

[39] ECF No. 134 at 174:9–175:11.

[40] ECF No. 140 at 59:4–9.

[41] ECF No. 154 at 4.

misrepresentations made by the defendant[] . . . ."[42]  So there was sufficient evidence for the jury to find that Velazquez was on notice that the program was fraudulent and he knowingly defrauded these victims.

**B.     Sufficient evidence supports Velazquez's impersonation conviction.**

Velazquez similarly challenges his two impersonation convictions.  A defendant is guilty of impersonation if the defendant "assumes or pretends to be an officer or employee acting under the authority of the United States . . . and acts as such."[43]  Velazquez contends that the evidence in this trial was insufficient for a conviction.  The only evidence supporting that inference, according to Velazquez, is Velazquez's photo in front of an IRS office, his business card, and some baseless testimony.[44]  Otherwise, "[t]he government presented no evidence . . . showing he knowingly pretended to act" as an IRS agent.[45]

But the government once again points out that Velazquez undersells that evidence, and the record contains more evidence than that.  The victims underlying these charges, Bueno and Torres, both testified that Velazquez told them he was an IRS agent when he marketed the "program" to them.[46]  Velazquez also had Bueno make out a check to "Deputy Bureau Audit IRS."[47]

---

[42] *Sullivan*, 522 F.3d at 974 (first quoting *Rogers*, 321 F.3d at 1230, then citing *Lothian*, 976 F.2d at 1267–68).

[43] *United States v. Tomsha-Miguel*, 766 F.3d 1041, 1045 (9th Cir. 2014) (quoting 18 U.S.C. § 912).

[44] ECF No. 152 at 8.

[45] *Id.*

[46] ECF No. 134 at 39:20–22 (Ms. Bueno: "Q. And did he tell you he worked at the IRS during any of these meetings? A. Oh yeah."); *id.* at 80:5–7 (Mr. Torres: "Q. Okay. Did he describe to you what his current occupation was? A. Yes. That he worked for the IRS.").

[47] Ex. 234.

Additional evidence from other victims further supports the government's impersonation theory. One victim testified that Velazquez introduced himself as an "agent" and referenced his "badge number."[48] Victims testified that Velazquez also instructed them to make checks out to "D.B.A. IRS Clerk,"[49] and the government introduced additional cashier's checks made out to payees such as "DBA SOS IRS," "DBA IRS," and "DBA IRS Clerk."[50] Velazquez also used emails such as "IRS@clerk.com" and one ending in "irs.gov@usa.com."[51] And while Velazquez points out that "[h]is mere presence in a public area" alone "does not prove impersonation,"[52] this photo lends credence to the impersonation charge when viewed with the other evidence[53]:



---

[48] ECF No. 134 at 207:8–13 (Ms. Gonzalez: "He got on the phone, and he said, my name is so-and-so, I am agent – I don't know – he just kept saying agent, badge number, I don't know what, I don't know what. So that's the way he would always introduce himself, with his badge number.").

[49] *See, e.g.*, ECF No. 134 at 233:14–17.

[50] *See, e.g.*, Ex. 171A, 234.

[51] ECF No. 140 at 46:7–8, 65:4–7.

[52] ECF No. 154 at 7.

[53] Ex. 166.

The bar for impersonation is not high. As the Ninth Circuit noted in *United States v. Tomsha-Miguel*, "[t]he most general allegation of impersonation of a government official is sufficient" for a conviction "under § 912."[54] For example, the *Tomsha-Miguel* panel found that this element was satisfied when a lawyer prepared a fake letter on the official letterhead of a congressman and signed with a fake congressional aide's name.[55] Velazquez's conduct and use of misleading entities and emails containing the term "IRS" meets this standard, and other evidence—such as witness testimony that he called himself an IRS agent—more than supported the jury's finding. To Velazquez's credit, he challenged the witnesses' beliefs on cross-examination, he testified that the victims were mistaken,[56] and he offered the patently ridiculous story that IRS stood for "Ivan Run Services."[57] But reconciling that testimony is within the province of the jury on whether to believe or disbelieve a witness.[58] So based on the evidence presented, there was sufficient evidence for a rational juror to find that Velazquez had attempted to pass himself off as an IRS agent.

**C.      Sufficient evidence supports the preparation-of-a-false-tax-return conviction because Velazquez was on notice that the "program" was fraudulent and advised his victim about the "program."**

The jury convicted Velazquez of one count of aiding in the preparation or presentation of victim Luis Erives's false tax return. A defendant is guilty of that crime if "(1) the defendant aided, assisted, or otherwise caused the preparation and presentation of a return; (2) that the

---

[54] *Tomsha-Miguel*, 766 F.3d at 1045–46 (cleaned up).

[55] *Id.* at 1046.

[56] ECF No. 140 at 66:14–69:6.

[57] *Id.* at 65:8–10.

[58] *United States v. Perez-Hinojosa*, 191 F.3d 462 (9th Cir. 1999) ("It was within the province of the jury to believe [one witness's] testimony, and to disbelieve [another's] testimony.").

10

return was fraudulent or false as to a material matter; and (3) the act of the defendant was willful."[59]  "The government "may base its proof of willfulness on circumstantial evidence indicating that the defendant knew or must have known that his returns were false."[60]

Velazquez challenges the first (preparing the return) and third (intent) elements of this crime.  As to the first element, Velazquez initially argues that he did not personally prepare this tax return but rather relied on pre-prepared forms.[61]  In his reply, Velazquez shifts his argument to minimizing his role and characterizes the evidence as "show[ing] that [he] collected information and accompanied Mr. Erives, not that he prepared, directed, or advised on the contents of any allegedly false return" and "others within the organization" prepared the documents.[62]

Both parties agree that a jury may convict under this statute on conduct far broader then just preparing a tax return.[63]  For example, in *United States v. Smith*, two defendants convinced victims to put their assets into purportedly tax-free "Unincorporated Business Organizations," which the defendants managed and used to steal money from their victims.[64]  As part of the scheme, the defendants advised victims to deduct "pretty much everything" as a business expense in their tax returns.[65]  The defendants were ultimately convicted of aiding in the preparation of false tax returns, which the defendants challenged as unsupported by the

---

[59] *Kawashima v. Holder*, 615 F.3d 1043, 1055 (9th Cir. 2010).

[60] *United States v. Tucker*, 133 F.3d 1208, 1218 (9th Cir. 1998).

[61] ECF No. 152 at 8–9.

[62] ECF No. 154 at 7–8.

[63] *United States v. Smith*, 424 F.3d 992, 1009 (9th Cir. 2005) ("We do not require defendants engaged in tax schemes to physically "prepare" the tax returns to be found guilty of § 7206(2).")

[64] *Id.* at 996.

[65] *Id.*

11

evidence.[66]  But the Ninth Circuit held that sufficient evidence supported the convictions. Although the defendants did not actually prepare their victims' tax returns, the Ninth Circuit found "ample evidence of aid[ing], assist[ing] and advi[sing] in the preparation" of their victims' fraudulent tax returns.[67]  The court reasoned that the defendants directly caused their victims to file false and fraudulent returns because the defendants explicitly advised them to engage in dubious tax activity.[68]

The government identifies sufficient evidence here for a juror to find that Velazquez similarly advised Erives.  Erives testified that he attended one of Velazquez's presentations and that Velazquez advised him that he could submit an "application" to "get money back from the houses [he] lost . . . in foreclosure," and he could recover money from the IRS if he "pa[id] some money to" Velazquez.[69]  Velazquez requested that Erives provide certain documents after he enrolled in the "program."[70]  He also testified that they met at a Starbucks and he "gave [the document] to [Velazquez] with all [his] information," and Velazquez "c[a]me back later with . . . all the forms complete."[71]  Erives later met Velazquez outside the IRS office in Las Vegas, Velazquez gave him documents to sign, and Velazquez directed Erives to hand the false tax return to the IRS.[72]  This is more than sufficient evidence for a rational juror to find that Velazquez caused the filing of Erives's fraudulent tax return.[73]

---

[66] *Id.* at 998–99.

[67] *Id.* at 1009.

[68] *Id.*

[69] *See* ECF No. 137 at 11:25–12:12.

[70] *See id.* at 13:12–25.

[71] *Id.*

[72] *Id.* at 18:13–19:22, 34:21–23.

[73] *Smith*, 424 F.3d at 1009.

Velazquez's remaining intent argument is largely identical to his earlier arguments. He contends that he lacked specialized knowledge to know that the filings were false, and he, too, was duped into the scheme.[74] "Willfulness . . . requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty."[75] The record supports a finding of willfulness because the filing of this tax return occurred in December 2016,[76] after previous victims had told Velazquez that the "program" was fraudulent and IRS agents were contacting them.[77] So a rational juror could conclude that Velazquez acted willfully.

**D.      The evidence does not support a new trial.**

Velazquez contends that even if the court concludes that sufficient evidence supports the jury's verdict, he should be alternatively granted a new trial.[78] Federal Rule of Criminal Procedure 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."[79] "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury."[80] "A motion for a new trial is directed to the discretion of the

---

[74] ECF No. 152, 154.

[75] *Cheek v. United States*, 498 U.S. 192, 201–02 (1991).

[76] ECF No. 137 at 18:13–16.

[77] *See, e.g.*, ECF No. 137 at 48:17–52:4, 149:9–14.

[78] ECF No. 152 at 9.

[79] Fed. R. Crim. P. 33(a).

[80] *United States v. Alston*, 974 F.2d 1206, 1211–12 (9th Cir. 1992) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

district judge."[81]  While Rule 33 allows the court to reweigh evidence,[82] I do not find that alters the conclusion.  Sufficient evidence supported each charge as explained *supra*, and the evidence preponderates in favor of the jury's verdict.  So I deny the motion for acquittal and new trial.

### Conclusion

IT IS THEREFORE ORDERED that defendant's renewed motion for acquittal or new trial **[ECF No. 152] is DENIED.**

_____
U.S. District Judge Jennifer A. Dorsey
April 23, 2026

---

[81] *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981).

[82] *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992).